THE PEOPLE *ex rel.* William F. Herndon *et al.*
*v.*
CHARLES E. OPEL, County Clerk.

*Opinion filed December 20, 1900.*

1. PUBLIC OFFICERS—*a vacancy implies the existence of the office to be filled.* The term "vacancy," as used in sections 125 and 133 of the Election act, (Rev. Stat. 1874, pp. 466, 468,) implies that the office must exist and have been filled.

2. COURTS—*probate judge and clerk for new court can only be elected when the county judge is elected.* Under the constitution and statutes of Illinois the terms of office of the probate judge and probate clerk begin at the same time as those of the county judge and county clerk, after it has been officially ascertained that the

county has the requisite population, and until such time there are no vacancies in such offices which may be filled by special election called by the county clerk.

3. SAME—*official census announcement does not establish probate court.* The official census announcement that a county has a population of 70,000 does not of itself establish a probate court in such county, but such court may be established by the election of a probate judge at the same time that the next succeeding election for county judge is held.

ORIGINAL petition for *mandamus.*

This is an original petition for *mandamus,* filed in this court on October 5, 1900, by the People through the Attorney General upon the relation of William F. Herndon and Fred W. Long, citizens and residents of Sangamon county, praying that the writ may be issued directed to Charles E. Opel, county clerk of Sangamon county, commanding him forthwith to issue an order appointing a day for the election of a clerk of the probate court of Sangamon county, and cause notice thereof to be given as in other cases of election, as provided in section 133 of chapter 46, entitled "Elections," of the statutes of Illinois.

Section 133 of chapter 46, referred to in the prayer of the petition for *mandamus,* is section 133 of "An act in regard to elections and to provide for filling vacancies in elective offices," approved April 3, 1872, in force July 1, 1872, and is as follows: "When a vacancy shall occur in the office of county commissioner, State's attorney, sheriff, coroner, county clerk, recorder of deeds, county treasurer, county surveyor, justice of the peace, constable, or other county or precinct officer not otherwise provided for by law, within one year before the expiration of the term of such vacant office, the vacancy shall be filled by appointment, by the county board of the county in which the vacancy exists; but if such unexpired term exceeds one year, the county clerk, or, in case of a vacancy in his office, the chairman of the county board, shall issue an order appointing a day for an election to fill such vacancy, and cause notice thereof to be given as in other

cases of election." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1670).

The petition for *mandamus* quotes section 20 of article 6 of the State constitution, which provides as follows: "The General Assembly may provide for the establishment of a probate court in each county having a population of over 50,000, and for the election of a judge thereof, whose term of office shall be the same as that of the county judge, and who shall be elected at the same time and in the same manner. Said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators, and settlement of their accounts; in all matters relating to apprentices, and in cases of the sales of real estate of deceased persons for the payment of debts." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 154).

The petition then sets forth section 1 of an act passed by the legislature in pursuance of said constitutional provision, said act being known as chapter 37 of the Revised Statutes, and entitled "An act to establish probate courts in all counties having a population of 70,000 or more, to define the jurisdiction thereof," etc., approved April 27, 1877, in force July 1, 1877, and amended in 1881 by the substitution of 70,000 for 100,000. Said section 1 of said act of 1877, as amended in 1881, is as follows: "That there shall be established in each county of this State, now created and organized, or which may be hereafter created and organized, and which has a population of 70,000 or more, a court of record, to be styled 'The probate court of (name of) county.' Such court shall have a seal, and may, from time to time, as may be necessary, renew or alter the same. The expense of such seal, and of renewing and altering the same, shall be paid by the county." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 1194).

The petition then avers that said last named act provides for an election of a probate judge and clerk of said

court.    Section 3, which provides for the election of the judge, is as follows:   "The judge of said court in each county in which such court shall be established shall be elected on the Tuesday next after the first Monday in November, at the same election at which the county judge is elected, and every fourth year thereafter, and shall enter upon the duties of his office on the first Monday of December after his election, and shall hold his office for a term of four years and until his successor is elected and qualified, and shall be known as the probate judge of (name of) county."   (Id. p. 1194).   The section providing for the election of the clerk of said court is section 13 and is as follows:   "There shall be elected at the same time as the probate judge is elected a clerk of the probate court, who shall hold his office for a term of four years and until his successor shall be elected and qualified.    Before entering upon the duties of his office he shall take and subscribe the oath required by the constitution of the State."   (Id. p. 1198).   Section 24 of said last named act provides as follows:   "When a vacancy shall occur in the office of judge of the probate court of any county, the clerk of the court in which the vacancy exists shall notify the Governor of such vacancy.   If the unexpired term of the office made vacant is less than one year, at the time the vacancy occurs, the Governor shall fill such vacancy by appointment; but if the unexpired term exceeds one year, the Governor shall issue a writ of election as in other cases of vacancy to be filled by election."   (Id. p. 1200).

The petition then avers, that the United States government has taken a regular census, being the twelfth, as provided by law, of the population of Sangamon county, and that it has thereby been officially ascertained that said Sangamon county has a population of 71,593; that an official certificate under the hand and seal of the director of said United States census has been filed in the office of the clerk of the county court of Sangamon

county, which certificate certifies that the official count of the returns for the twelfth United States census for said county shows the total population of the county to be 71,593, and which said certificate is dated September 26, A. D. 1900.

It is also alleged in the petition, that the board of supervisors of said county have already taken steps to fix the salaries of the judge and clerk of said court, and that the two principal political parties in said county have made nominations for said offices of judge and clerk of said probate court to be voted for at the November election in 1900. The petition also avers, that the relators have demanded of the respondent, Opel, said county clerk, and caused written notice to be given him, requesting him to issue an order appointing a day for an election to fill a vacancy in the office of probate clerk in and for the probate court of said county, and to cause notice of said election to be given as in other cases of election, which said written notice, demand or request bears date September 29, 1900, and was served on the same day. The petition then further avers that said Opel, county clerk as aforesaid, refuses to issue said order and give said notice.

To this petition for *mandamus* the respondent Opel, county clerk as aforesaid, has filed a demurrer, thus forming an issue of law upon the allegations of the petition.

EDWARD C. AKIN, Attorney General, (CLINTON L. CONKLING, and ALBERT SALZENSTEIN, of counsel,) for relator:

There is nothing in the constitution or statute which requires the first election for probate judge and probate clerk in any county to be held only at the regular election on Tuesday after the first Monday in November, at the same election at which the county judge shall be elected, but there being a vacancy in each of such offices immediately upon the county having a population of

70,000 or more, as determined by the next preceding census of this State or of the United States, an election may be called as provided for in other cases of vacancy. *State v. County Court*, 50 Mo. 317.

The law creating probate courts goes into effect, as to each county in the State, as soon as such county has the requisite population of 70,000 or more, as officially ascertained by the next preceding State or United States census. Const. of 1870, art. 6, secs. 20, 33; Hurd's Stat. 1899, chap. 37, sec. 216; *Knickerbocker* v. *People*, 102 Ill. 218.

In counties having a population of 70,000 or more the county court has no jurisdiction in probate matters from the time when the county has that population, as officially ascertained by the next preceding State or United States census. *Klokke* v. *Dodge*, 103 Ill. 125; *Meserve* v. *Delaney*, 105 id. 53.

The statute provides such court shall have a probate judge and clerk. Hurd's Stat. 1899, chap. 37, secs. 218, 228.

There being no persons elected or appointed to fill said offices, there exists, in contemplation of law, a vacancy in each of said offices of judge and clerk of the probate court. Throop on Public Officers, sec. 431; Mechem on Public Officers, secs. 127, 132; *Stocking* v. *State*, 7 Ind. 326; *State* v. *Hyde*, 121 id. 20.

E. S. SMITH, for respondent:

The legislature has not declared, simply, that the county clerk shall call an election to fill all vacancies in certain offices, but it has declared what shall constitute a vacancy. (Rev. Stat. chap. 46, sec. 125.) The act declares the "office shall become vacant upon the happening of either of the following events before the expiration of the term of such office." Then follow, with numbered precision, eight specified events that shall be deemed to create a vacancy. No mention is made of a vacancy in an office before the time fixed by law for filling that office. The clause "the office shall become vacant" implies that

the office is first to exist and to be filled before it can become vacant within the meaning of that term, so far as it refers to filling the office by any special proceeding.

An office cannot be said to be vacant when any person is authorized to act in it and does so act. A constitutional provision authorizing the Governor to fill vacancies applies only when there is no person authorized by law to discharge the duties of the office. Where there is a person so authorized to act temporarily, until the action of the electing or appointing power, the Governor has no power to appoint. Throop on Public Officers, 431.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

No probate court has existed in Sangamon county prior to the filing of the present petition for a writ of *mandamus* separately and independently of the county court, which has jurisdiction in probate matters. Since, however, the recent census of the United States shows the population of that county to be in excess of 70,000, it is claimed that thereby a probate court has been established in that county. The contention of the relators seems to be that, as soon as the population of a county is ascertained by the next preceding Federal census to be in excess of 70,000, the offices of probate judge and probate clerk are established, and that a vacancy is at once created in those offices, so that, immediately upon the official announcement of the census, it becomes the duty of the county clerk to call an election to fill the alleged vacancy in the office of probate clerk.

*First*—The first question, presented by the demurrer to the petition, is whether or not, by the mere official announcement of the census showing a population in excess of 70,000, a probate court is established and the offices of probate judge and probate clerk are created.

Section 20 of article 6 of the constitution, as quoted in the statement preceding this opinion, provides for the

establishment by legislative action of a probate court in each county having a population of over 50,000, and for the election of a judge thereof, whose term of office shall be the same as that of the county judge, "and who shall be elected at the same time and in the same manner." The mandate of the constitution is clear and emphatic, that the judge of the probate court to be established shall be elected at the same time when the county judge is elected. It then becomes important to ascertain when the judge of the county court is required by law to be elected.

Section 8 of article 10 of the constitution provides that "in each county there shall be elected the following county officers, at the general election to be held on the Tuesday after the first Monday in November, A. D. 1882: A county judge, county clerk (and other officers). Each of said officers shall enter upon the duties of his office, respectively, on the first Monday of December, after his election, and they shall hold their respective offices for the term of four years, and until their successors are elected and qualified." (1 Starr & Curt. Ann. Stat.— 2d ed.—p. 189).

In pursuance of this constitutional provision the legislature passed an act, entitled "An act to extend the jurisdiction of county courts," etc., approved March 26, 1874, in force July 1, 1874, section 1 of which provides "that there shall be in each of the counties of this State, now created and organized, or which may hereafter be created or organized, a court of record, to be styled 'The County Court of........County.' Said court shall have a seal." Section 3 of the last named act provides that "the county judge, in each county, shall be elected on the Tuesday after the first Monday in November in the year 1882, and on Tuesday after the first Monday in November every fourth year thereafter, and shall enter upon the duties of his office on the first Monday in December after his election, and shall hold his office for

four years, and until his successor is elected and quali-
fied." Section 5 of said act provides that "county courts
shall have jurisdiction in all matters of probate, settle-
ments of estates of deceased persons, appointment of
guardians," etc. (1 Starr & Curt. Ann. Stat.—2d ed.—
pp. 1175, 1176). Section 16 of the act of April 3, 1872,
being chapter 46 of the Revised Statutes, provides that
"the county judges and county clerks shall be elected
on Tuesday next after the first Monday of November,
1882, and every four years thereafter, and shall enter
upon the duties of their offices on the first Monday of
December after their election." (2 Starr & Curt. Ann.
Stat.—2d ed.—p. 1642).

Inasmuch as, under the constitution and the statutes
passed in pursuance thereof, the county judge of Sanga-
mon county was first elected at the general election of
November, 1882, and his successor was elected every four
years thereafter, to enter upon the duties of the office
on the first Monday of December after the election, it
follows that the judge of the county court of Sangamon
county must have been elected at the general election in
November, 1898, and entered upon the duties of his office
on the first day of December, 1898. This being so, his
term of office does not expire until December, 1902. At
the latter date the election of a county judge takes place.
Consequently, the judge of the probate court to be estab-
lished in Sangamon county cannot be elected until the
general election of November, 1902.

The statute of 1877, as amended in 1881, providing
for the establishment of probate courts, requires that
the clerk of the probate court shall be elected at the
same time when the probate judge is elected. Therefore,
the clerk of the probate court to be established in San-
gamon county must be elected at the general election,
which takes place in November, 1902. This being so, it
is difficult to see how the clerk of the county court can
be compelled to call an election for the selection of a

clerk of the probate court to be established in Sanga-
mon county before the general election to take place in
November, 1902.

We are, therefore, of the opinion that it is not suffi-
cient merely that the county shall have the requisite
population of 70,000 in order to establish the probate
court, but the time must arrive for the election of the
judge of the probate court, which is the same time at
which the judge of the county court is elected. The court
cannot be established until it has a judge. A court has
been defined to be "a body in the government organized
for the public administration of justice at the time and
place prescribed by law;" and it has been said that "a
court is an incorporeal being, which requires for its ex-
istence the presence of the judge." (8 Am. & Eng. Ency.
of Law,—2d ed.—p. 22). If a court cannot exist without
the presence of the judge, and the judge cannot be elected
until November, 1902, it cannot be said that an election
should be called at this time for the selection of the clerk
of the court, over which the judge is to preside. Indeed,
the act of 1877 expressly provides that the clerk shall
not be elected until the judge is elected. When the Fed-
eral census determines that the county has a population
of over 70,000, the court may then be established and put
into operation by electing a probate judge and a probate
clerk at the next election at which the county judge is
elected. Unless the things required by the constitution
for the existence of the court concur, the court cannot
exist.

*Second*—It is claimed, however, on the part of the re-
lators, that a vacancy exists in the office of the clerk of
the probate court within the meaning of the law relat-
ing to vacancies, and that the county clerk is, on that
account, required to call an election to fill the vacancy.
This contention proceeds upon the theory, that the offi-
cial announcement of the census bureau as to the popu-
lation establishes the probate court and the office of clerk

thereof. As this theory cannot be sustained in view of what has already been said, it follows that no vacancy exists to be filled by an election. It has been held, it is true, that a vacancy may exist when an office is created and no one has been appointed to fill it, and it has been said: "An existing office without an incumbent is vacant whether it be a new or an old one." (Mechem's Public Offices and Officers, secs. 127, 132, and authorities referred to in notes). But section 125 of the act of 1872, providing for elections, defines specifically what a vacancy is and when it exists. Said section 125 provides that "every elective office shall become vacant on the happening of either of the following events, before the expiration of the term of such office: *First*—The death of the incumbent. *Second*—His resignation. *Third*—His becoming insane. *Fourth*—His ceasing to be an inhabitant of the State. * * * *Fifth*—His conviction of an infamous crime, or of any offense involving a violation of official oath. *Sixth*—His removal from office. *Seventh*—His refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit or file such oath or bond within the time prescribed by law. *Eighth*—The decision of a competent tribunal declaring his election void." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1668). The word, "vacancy," as used in section 133 of this statute, must refer to such vacancy as is defined in section 125 of the same statute. In section 125 no mention is made of a vacancy in an office before the time fixed by law for filling that office. The expression in section 125, that "every elective office shall become vacant," implies that the office is first to exist, because it could not become vacant until it had already existed; and the plain inference is, that it is to be filled before it can become vacant within the meaning of that term, so far as it refers to filling the office by any special proceeding. The statement in section 125, that the events therein referred to are to happen "before the expiration of the term of such office" in order

to create a vacancy, implies that such events are to occur after the beginning of the term of office. Here, there has been no beginning of a term of the office of probate clerk. None of the events specified have occurred; hence there is no vacancy, as contemplated by the law.

Many of the cases, where it has been held that a vacancy may exist as soon as an office is created and before it has been filled at all, proceed largely upon the ground that the performance of the duties of the office is essential, and that an appointment or special election is the only means of securing such performance. In other words, the authorities for the position contended for are based mainly upon the consideration that there is a vacancy when there is no incumbent to perform the duties of the office. Here, however, the county judge elected in November, 1898, and who entered upon the duties of his office on the first Monday in December, 1898, has probate jurisdiction, and can perform the duties of probate judge until December, 1902. So, also, the county clerk elected at the same time and for the same period is probate clerk for the same period. The clerk of the county court can perform until December, 1902, all the official duties of a probate clerk, and, hence, there is now an incumbent duly elected and qualified, who is capable of performing such duties.

Our conclusion upon the whole matter is that, under the constitution and the statutes of this State, the terms of the probate judge and probate clerk of a probate court to be established begin at the same time as the terms of the county judge and county clerk after it has been officially ascertained that the county has the requisite population; and that there is no vacancy in the office of probate clerk in Sangamon county, which can be filled at this time.

Accordingly, the demurrer to the petition for the writ of *mandamus* is sustained, and the prayer of the petition is denied.                                    *Writ denied.*