In this case I agree with the conclusion reached in the majority opinion that the exception of failure on the part of the relator to set forth in his petition the name of the person rightfully entitled to the office, and the exceptions of vagueness and of no cause or right of action, were properly overruled, but inasmuch as I disagree with the reasons assigned and the conclusion reached by which the judgment appealed from was affirmed, I find it necessary to hand down this dissenting opinion.
It is my opinion, in the light of the jurisprudence as I understand it, that the additional office of police juror for the certain wards of the Parish of East Baton Rouge which are involved in this and the companion suits, came into existence at the time the release of the United States census for the year 1930 showed that they were entitled to an additional member of that body in view of the required increase in population. That to me is specifically what the Supreme Court of our State held in the case of Thomas et al. v. Doughty, 163 La. 213, 111 So. 681, in which the suit brought by the plaintiffs was dismissed on an exception for want of proper interest to maintain their action. It is rather important to consider that case in a bit more detail in connection with the question under discussion.
The statute involved in that case was Act 279 of 1908 which like Act 12 of 1940, in this case, provided for the office of police jurors in the State. Its language was almost verbatim with the present act in stating that in each ward of each parish in the State having a population of less than 50,000 inhabitants "there shall be elected in the manner provided by law in addition to the police juror to which said ward is entitled, an additional police juror for each five thousand inhabitants which said ward contains; * * *." The only difference that I can see is that under the present act, No. 12 of 1940, parishes of over 50,000 inhabitants are dealt with where the additional population increase required is 10,000, and besides that, which makes the act *West Page 599 
a good bit more specific, there is contained a provision of apportionment which is based upon the last preceding census of the United States.
In the Thomas case it was the office of an additional member of the Parish School Board which was at issue, but that made no difference in interpreting the provisions of the statute because by Act 100 of 1922, it was provided that there shall be a member of the Parish School Board for each member of the police jury of each ward. The ward involved in that case was Ward 3 of Lasalle Parish. The increase in population in the ward was apparently noted by the police jury of the parish and as Act 279 of 1908 did not provide a basis of apportionment, as does Act 12 of 1940, the opinion of the Attorney General was sought on how to proceed in ascertaining if the ward was entitled to additional representation on the School Board. The police jury was advised, following the decision of the Supreme Court in the case of McFarlain v. Town of Jennings, 106 La. 541, 31 So. 62, that it should direct the taking of the census of the ward by competent parties. Following that advice the police jury provided by ordinance for the taking of the census which was done and which disclosed a population slightly in excess of the required inhabitants. After setting out these facts, the Supreme Court then states in language so positive that it can hardly be questioned, "and thus it came about that ward 3 became entitled to an additional member on the parish school board;" and then, as though covering the further point involved in the present controversy, it added, "and, there being no incumbent in said office, the Governor appointed the present relator to fill the vacancy thus existing." [163 La. 213, 111 So. 682.]
The member who had been thus appointed and qualified apparently intended to take part in the next meeting of the board but before the date of that meeting several residents and taxpayers of the ward sought and obtained from the district court a restraining order prohibiting him from exercising his functions as a member of the board, not on the ground that they questioned the creation of a new office as it were, or that he had been improperly appointed by the Governor, but because, as they allege, the census taken by the police jury did not correspond with the Federal census taken in 1920 and that it was taken in an illegal manner and was therefore erroneous. It did not seem to have occurred to anyone to even question the fact that the ward had become entitled to this additional representation and the right of the Governor to fill the office at the time. In my opinion, it was necessary, for the purpose of deciding the issue that was presented to it, for the court to hold, as in effect it did, that the ward had become entitled to the additional member and that it was clear that the incumbent who had been appointed had prima facie rights in the premises by virtue of the formal finding of the police jury which disclosed the additional number of inhabitants in the ward and also by virtue of his appointment by the Governor.
In the case before us the statute, Act No. 12 of 1940, specifically provides that the apportionment giving the ward additional representation on the police jury of the parish, shall be based on the Federal census, and therefore the grounds of attack which were levelled against the incumbent in the Thomas case are foreclosed. If, under a census about which there could have been some question concerning its correctness, the court held in that case, after the census as taken had showed the required increase in population, that it "thus * * * came about that [the ward] became entitled to an additional member on the parish school board," and that a vacancy existed because there was no incumbent, it seems to me that it could be held with a good bit more logic and soundness that when the United States census, which is made the basis of apportionment under the present statute, showed the required increase in population, that it also, "came about," that the wards involved in these cases were entitled to an additional member of the parish police jury, that vacancies existed as there were no incumbents, and the Governor had the right to fill the same.
Once the office has been shown to have come into existence and there was no incumbent, under the vast weight of authority, as I have been able to find, the Governor was authorized to fill it during the period of such vacancy which can only mean, for the remainder of the "unexpired term," all as is provided for under Act 236 of 1916. The authorities seem to be unanimous on the point that the word "vacancy," as applied to a public office, has no peculiar or technical meaning and there is no basis for the distinction that it applies only to an *West Page 600 
office which has been vacated by death, resignation or otherwise. See Commonwealth v. McAfee, 232 Pa. 36, 81 A. 85; State v. Irwin,5 Nev. 111; Yates v. McDonald, 123 Ky. 596, 96 S.W. 865; Williams v. Mabry, 176 Tenn. 343, 141 S.W.2d 481. Indeed, in one of the very cases cited in the majority opinion, People v. Opel,188 Ill. 194, 58 N.E. 996, the court recognizes that it has been held that a vacancy may exist when an office is created and no one has been appointed to fill it. In the light of all the jurisprudence which could be found on the question, the court could hardly have stated otherwise, no matter what the particular issue involved before it at the time was. How the majority opinion in this case could construe anything that was said in the case of People ex rel. Synder v. Highland, 212 N.Y. 236, 106 N.E. 89, Ann.Cas.1915D, 122, otherwise, I am unable to understand, as the decision which upheld the appointment of the officers therein involved to newly created offices, by reason of the vacancies therein existing, is based on the very same principle enunciated in the numerous decisions just cited, and, I may add, that quite a number of others which are equally as strong in support of that principle are reviewed and favorably considered by the court. Neither is it surprising to me that the Supreme Court of our State in the case of Thomas et al. v. Doughty, supra, made such definite statements as are found in the opinion, and which I have quoted herein.
As is conceded in the majority opinion the interpretation which I give to the statute and which follows what I consider to be that placed by the Supreme Court on the similar Act of 1908, in the Thomas case, is the same which has been consistently given by the Attorney General's office of this State to the Governor or other officials since the decision by the court in that case. In the Report and Opinions of the Attorney General for the years 1932 to 1934, there is found an opinion by Mr. George M. Wallace, Assistant Attorney General, addressed in the form of a letter to the Secretary of the Governor on July 13, 1932, in which he seems to be firmly of the opinion that the Governor had the right to appoint additional members of police juries if they had not been elected. Rather significantly on the same page of the same report appears an opinion rendered by the Attorney General himself at that time, the present Judge Gaston L. Porterie, in the form of a letter written to the Governor himself in which he intimates that the Governor not only had the right and authority to make such appointments, but that it was his duty to do so.
In Report and Opinions of the Attorney General for the years 1934 to 1936, page 835, there appears again an opinion in a letter by Judge Porterie in which he indicates the thought that in view of an increase in population of a certain ward of the parish therein referred to, on the basis of the Federal census of 1920, it would be a useless expenditure of money for the police jury to have another census taken to determine whether the ward was entitled to additional representation on its police jury, but in any event he is firmly of the opinion that if the ward showed the required increase, upon proof being submitted to the Governor, "he would be empowered under the law to make the appointment." In Report and Opinions of the Attorney General for the years 1936 to 1938, page 761, there appears another opinion written by Judge Porterie to the same effect, and in Report and Opinions of the Attorney General for the years 1938 to 1940, at page 830, appears a letter by Special Assistant Attorney General Wade O. Martin, Jr., in which he recalls a former opinion to the contrary which he had given and states that "undoubtedly the proper construction" is that given by Attorney General Porterie in the Report and Opinions for the years 1936 to 1938, pages 761 and 697.
The opinions given by the present Attorney General's office are not yet published, but copies are found in the record and they are all to the same effect as those which I have previously referred to.
It is stated in the majority opinion that whilst the interpretations placed on these acts by the office of the Attorney General should be accorded great weight, the final duty and responsibility for interpreting and construing laws rests upon the courts. It is true that such opinions are not binding as authority on the courts, but when there is such a unanimity of agreement as is found to be the case in the opinions handed down on the questions with which we are here concerned, I must say that they have very strong persuasive force and they should not be lightly overruled by the courts. The men who occupy the office of Attorney General are men who are learned in the law and are elected by the people of *West Page 601 
the State at large to be at the head of the Department of Justice of the State, and certainly their opinions are entitled to the greatest respect. Moreover, the question herein involved was so frequently considered by them and their advice so often acted upon by various heads of the Executive Department that it would seem that they should be entitled to greater weight for that additional reason.
A careful consideration of the issues involved in these cases leads me to conclude that whilst the additional office created under the act is an elective one to which undoubtedly the person who is to fill it for the term beginning with the General State Election next following the time it comes into existence has to be elected, yet whenever a ward becomes entitled to the additional representation and there is a statute which, like Act 236 of 1916, authorizes the appointment of an incumbent during the interim, the people of that ward should not be made to wait three years or more, as in the cases before us, before obtaining the advantages of, and uniformity in that representation to which they are entitled under the law because of the increase in population. By reason of the already existing statute, Act 236 of 1916, it was unnecessary, as suggested in the majority opinion, that Act 12 of 1940 should have further provided for such appointment to fill the vacancy that existed during that interim.
For the reasons herein stated, I respectfully dissent from the decree rendered in the majority opinion.